IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDDIE E. SINKLER, | : | |
|     Plaintiff | : | |
| | : | No. 1:19-cv-936 |
|     v. | : | |
| | : | (Judge Rambo) |
| MR. CLARK, *et al.*, | : | |
|     Defendants | : | |

### MEMORANDUM

This matter is before the Court pursuant to the motion to dismiss (Doc. No. 19) filed by Defendants Warden Clark ("Clark") and John Addison ("Addison"). The motion is fully briefed and ripe for disposition. For the following reasons, the Court will grant the motion to dismiss. The Court will also dismiss *pro se* Plaintiff Freddie E. Sinkler ("Plaintiff")'s claims against Defendant Adonna Thomas ("Thomas") pursuant to 28 U.S.C. § 1915A.

### I.  BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI Camp Hill"), initiated the above-captioned action on May 31, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Clark, Addison, and Adonna Thomas ("Thomas") while he was incarcerated at the Dauphin County Prison ("DCP"). (Doc. No. 1.) Plaintiff alleges that a week before the start of Ramadan, Defendant Thomas changed the time when

Plaintiff received his medication from 3:30 a.m. to 5:30 p.m. (*Id.* at 2.) Plaintiff asked Defendant Thomas to change his medication time back to 3:30 a.m. so that he could fulfill his religious obligations during Ramadan, but she refused. (*Id.* at 2-3.) Plaintiff spoke to Defendant Addison, the Director of Medical Treatment at DCP, about the issue, and Defendant Addison said that he would "talk to medical and get [Plaintiff] back on that time period." (*Id.* at 3.) Plaintiff, however, never heard back from Defendant Addison. (*Id.*) Plaintiff maintains that he tried to speak to Defendant Clark but that he could "not get a direct answer from him." (*Id.*) It appears that Plaintiff is raising alleged violations of his First Amendment rights regarding free exercise of religion. As relief, Plaintiff requests: (1) that staff at DCP "accommodate[e] a change in medication time for every Muslim who wants it during Ramadan"; (2) reimbursement for his expenses; and (3) that Defendant Thomas be reprimanded and sanctioned. (*Id.* at 3-4.)

Plaintiff paid the $400.00 filing fee on June 13, 2019. Accordingly, in an Order dated June 14, 2019, the Court directed the Clerk of Court to effect service of Plaintiff's complaint upon Defendants. (Doc. No. 6.) Defendant Thomas filed an answer with affirmative defenses on August 7, 2019. (Doc. No. 17.) Defendants Clark and Addison filed their motion to dismiss on September 3, 2019 (Doc. No. 19) and, after receiving an extension of time (Doc. Nos. 22, 23), their brief in support on

October 4, 2019 (Doc. No. 26). In an Order dated October 22, 2019, the Court directed Plaintiff to respond to the motion to dismiss within thirty (30) days. (Doc. No. 28.) On November 8, 2019, the Court received Plaintiff's oppositional brief. (Doc. No. 29.) On November 12, 2019, the Court received a letter from Plaintiff regarding administrative exhaustion. (Doc. No. 30.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer

3

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice,

matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Screening Pursuant to 28 U.S.C. § 1915A

Although Plaintiff paid the filing fee in full, the Court has the authority to screen his complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not

proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted, *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2). The determination of whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999); *Neal v. Pa. Bd. of Probation & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997). While such screening should be done "as soon as practicable after docketing," the Court is not precluded from conducting such screening after an answer is filed. *See Lair v. Purdy*, 84 F. App'x 413, 414 (5th Cir. 2003); *Janowski v. Williams*, No. 12-3144 (FLW), 2015 WL 4171727, at *2 n.1 (D.N.J. July 10, 2015) ("A § 1915A dismissal may be made at any time, before or after service of process and before or after an answer is filed." (quoting *Loving v. Lea*, No. 13-158, 2013 WL 3293655, at *1 (M.D. La. June 28, 2013))).

### C. Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Defendants Clark and Addison's Motion to Dismiss

Defendants Clark and Addison seek dismissal of Plaintiff's complaint for the following reasons: (1) Plaintiff did not exhaust his administrative remedies; (2) Plaintiff has not stated a plausible claim for relief; and (3) Plaintiff's requests for injunctive relief are moot. (Doc. No. 26.) The Court will first consider their argument regarding Plaintiff's failure to exhaust.

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion

requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"); *Perazzo v. Fisher*, No. 11-1505, 2012 WL 1964419, at *1 (M.D. Pa. May 31, 2012) (dismissing case for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at the "last stage"); *Jones v. Lorady*, No. 11-666, 2011 WL 2461982, at *3-4 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint for failure to exhaust administrative remedies prior to initiating federal action). Courts have concluded that inmates who

fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply

claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from

taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

In his complaint, Plaintiff indicated that he filed a grievance at DCP on May 7, 2019, but that he did not exhaust his administrative remedies. (Doc. No. 1 at 2.) Plaintiff maintains that he "never received a response" and that DCP "does not respond to anything." (*Id.*) Defendants Clark and Addison assert that "Plaintiff openly admits in his complaint that he did not exhaust available administrative remedies at Dauphin County Prison. His description of his efforts toward exhaustion also shows a failure to exhaust." (Doc. No. 26 at 3.) Defendants maintain that "[f]iling suit after not receiving a response within a month's time is clearly unacceptable under § 1997e(a)." (*Id.* at 4.) In his letter regarding exhaustion,

12

Plaintiff asks that the Court "allow [him] to continue this civil case until [he] fully exhaust[s] [his] administrative remed[ies]" at DCP. (Doc. No. 30.) Plaintiff indicates that he recently received a response to his grievance, which he has appealed. (*Id.*) He asserts that DCP "is taking extremely long to respond and [he] really need[s] more time to fully exhaust." (*Id.*)

Although it appears that DCP is taking quite some time to address Plaintiff's grievances, the record reflects, and Plaintiff has acknowledged, that he did not exhaust his administrative remedies prior to initiating the above-captioned case, as he is currently in the process of doing so. *See Oriahki*, 165 F. App'x at 993. Accordingly, the Court will grant Defendants Clark and Addison's motion to dismiss on this basis and dismiss Plaintiff's claims against them without prejudice to his right to refile once he has exhausted his administrative remedies.[1] *See Booth v. Churner*, 206 F.3d 289, 299-300 (3d Cir. 2000) (affirming district court's dismissal of § 1983 action without prejudice where the inmate-plaintiff failed to fully exhaust administrative remedies before bringing suit in federal court).

---

[1] Because the Court is granting the motion to dismiss on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing the above-captioned case, the Court will not address whether Plaintiff has stated a plausible First Amendment claim against Defendants Clark and Addison. The Court notes, however, that Defendants Clark and Addison are correct that Plaintiff's transfer to SCI Camp Hill moots his requests for injunctive relief. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

### B. Plaintiff's Claims Against Defendant Thomas

As noted above, on August 7, 2019, Defendant Thomas filed an answer with affirmative defenses, asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies. (Doc. No. 17 at 3.) While exhaustion is an affirmative defense, the Court may *sua sponte* dismiss an action pursuant to § 1915A when the failure to exhaust defense is obvious from the face of the complaint. *See Robinson v. Varano*, No. 3:10-cv-2131, 2010 WL 5653521, at *4 (M.D. Pa. Dec. 27, 2010) (citing *McPherson v. United States*, 392 F. App'x 938, 942-43 (3d Cir. 2010)), *Report and Recommendation adopted*, 2011 WL 290269 (M.D. Pa. Jan. 25, 2011).

Here, as discussed *supra*, Plaintiff did not exhaust his administrative remedies prior to initiating the above-captioned action. Plaintiff admitted to such in his complaint (Doc. No. 1 at 2) and in his letter dated November 12, 2019, he requests that this case be "continue[d]" until he fully exhausts his administrative remedies (Doc. No. 30). Accordingly, considering Plaintiff's failure to exhaust his administrative remedies, the Court will dismiss his claims against Defendant Thomas pursuant to 28 U.S.C. § 1915A(b)(1).

### C. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment,

unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Based on the foregoing, the Court concludes that it would be futile to allow Plaintiff to file an amended complaint because he has not yet exhausted his administrative remedies regarding his claims against Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants Clark and Addison's motion to dismiss (Doc. No. 19) will be granted. Plaintiff's claims against Defendant Thomas will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's claims and complaint (Doc. No. 1) will be dismissed without prejudice to his right to refile once he has exhausted his available administrative remedies. An appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: November 26, 2019